UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| BRET C. KIFER and JENNIFER A. KIFER, | CASE NO. 13-6085 RJB |
| Plaintiffs, | |
| v. | ORDER ON DEFENDANT'S MOTIONS FOR PROTECTIVE ORDER AND TO COMPEL AND PLAINTIFFS' MOTION TO COMPEL |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on Defendant American Family Mutual Insurance Company's ("American Family") Motion for Protective Order (Dkt. 63), Plaintiffs' Motion to Compel Production of Documents from Defendant (Dkt. 67), Defendant's Motion to Compel IRS Records and Tax Returns (Dkt. 65), and Defendant's Motion to Strike (Dkt. 80). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

This case arises from an insurance coverage dispute following a November 3, 2012 fire at Plaintiffs' personal residence. Dkt. 1. At the time of the fire, Plaintiffs had an insurance policy with Defendant, policy number 46-BD7584-01. Dkt. 18-1. Plaintiffs make claims for breach of contract, for violations of the duties of good faith and fair dealing found in the Washington Administrative Code ("WAC") 284-30-330 pursuant to the Insurance Fair Conduct Act, RCW

1   48.30.010, *et seq.* ("IFCA"), and for violations of Washington's Consumer Protection Act

2   ("CPA") RCW 19.86, *et seq.*  Dkt. 72.

3        Parties here certify that they have conferred and attempted to resolve these discovery

4   disputes, pursuant to Rule 37(a)(1), to no avail.  These motions followed.

5        Defendant moves for the issuance of an order protecting it from having to produce

6   documents asserted to be created in anticipation of litigation and that are protected by attorney-

7   client privilege and the work product doctrine.  Dkt. 63.  Defendant also moves for a protective

8   order from having to produce irrelevant advertising materials.  Dkt. 63.  Plaintiffs did not directly

9   respond to the motion for protective order, but, instead filed their Motion to Compel (Dkt. 67)

10   seeking an order compelling these purportedly protected documents and the advertising

11   materials.  These two motions should be considered together.  Defendant opposes the Plaintiffs'

12   motion to compel.  Dkt. 75. Parties certify that they have conferred on these discovery issues.

13   The motions should be granted, in part, and denied, in part.

14        Defendant also moves the Court for an order compelling Plaintiffs to execute a

15   stipulation and release to allow Defendant to obtain Plaintiffs' IRS records and tax returns from

16   2011 to present from the IRS.  Dkt. 65.  (The Plaintiffs' personal copies were purportedly

17   destroyed in the fire.  *Id.*)  Plaintiffs have responded and oppose the motion.  Dkt. 77.  The

18   information sought is relevant, so, Defendant's motion (Dkt. 65) should be granted.

19                   **<u>RELEVANT BACKGROUND FACTS</u>**

20        The following facts are taken from the February 10, 2015 Order on Defendant's Motion

21   for Partial Summary Judgment and Plaintiff's Motion for Leave to Amend Complaint (Dkt. 62,

22   at 2-5):

23           The fire was caused by a malfunctioning heater/fan in a bathroom.  Dkt.
           18-2.  On November 21, 2012, the fire was determined to be accidental.  Dkt. 18-

24

2. Plaintiffs submitted claims to Defendant for the loss, and Defendant accepted coverage. *Id.* Defendant paid Plaintiffs $3,000 on November 8, 2012 as an advance on their personal property. Dkt. 21.

On February 21, 2013, Plaintiffs' repair estimate was completed by Har-Bro West. Dkt. 52-4. Har-Bro West estimated that the replacement cost value ("RCV") of the structure was $413,474.56. *Id.*, at 51.

On March 29, 2013, Defendant sent Plaintiffs an estimate of damages for the structure by its contractor, Belfor Property Restoration. Dkt. 52-1. The actual cash value ("ACV")(cost of replacement less depreciation) was estimated to be $123,534.15. *Id.*, at 1. The RCV of the structure was estimated to be $267,871.94. *Id.*, at 1. In that estimate, Plaintiffs were informed:

> If you wish to make a claim for the recoverable depreciation amount, you must do TWO things:
> 1. You must have the item(s) replaced or repaired within one year from your date of loss. *Exception: Georgia and Washington policies ONLY - Please refer to your policy language as well as the section of this estimate titled Claiming Recoverable Depreciation following the Estimate Recap or Coverage Limit Details sections.
> 2. You must submit a final repair bill or purchase receipt showing the item(s) has been repaired or replaced.
> The attached estimate is what we expect to be the reasonable cost to repair or replace the property. This estimate may not include permit fees. If total charges for repair/replacement plus permits exceed the amount shown here for that repair/replacement, prior to any deductible, then additional amounts may be payable. If the actual cost is more or less, the final payment will be adjusted accordingly.

Dkt. 52-1, at 1.

On May 7, 2013, Defendant's contractor, Belfor's, estimate regarding repair of the structure increased: the ACV was estimated to be $147,241.16 and the RCV of the structure was estimated to be $321,446.87. Dkt. 52-7, at 1.

On May 28, 2013, Defendant paid Plaintiffs $122,534.15 ($123,534.15 less the $1,000 deductible) on Plaintiffs' structure claim in accord with the March 29, 2013 estimate. Dkt. 22-2.

Prior to the fire, Plaintiffs were having difficulty paying their mortgage, were "$100,000 underwater," and were trying to negotiate a loan modification with their bank. Dkt. 60-1, at 7. Plaintiffs state that they had difficulty trying to decide whether to fix the home. Dkt. 60-1, at 8.

In June of 2013, Plaintiffs sent Defendant their content inventory. Dkt. 52-15. The ACV for contents was estimated to be $542,164.95 and the RCV of the contents was estimated to be $651,879.31. *Id.*, at 2.

On August 6, 2013, Belfor, issued a new estimate for repairs to the structure for $394,588.33 RCV. Dkt. 52-9, at 1.

Plaintiffs demanded an appraisal in accord with the policy provisions on August 30, 2013. Dkt. 52-10.

On November 1, 2013, Plaintiffs filed this case in Clark County Washington Superior Court. Dkt. 1. Plaintiffs' Complaint alleged that Defendant: 1) breached their contract in failing to pay for the loss of both the structure and contents of the structure and 2) breached the covenant good faith and fair dealing pursuant to the IFCA, RCW 48.30.010, *et seq.*, and the WAC 284-30-330. *Id.* Plaintiffs seek damages, including treble damages, attorney's fees and costs. *Id.*

The case was removed to this Court, based on diversity jurisdiction, on December 24, 2013. Dkt. 1.

In accord with the policy's provisions and Plaintiff's demand, the appraisal on the structure claims (including landscaping) was conducted and an appraisal award was issued on December 15, 2013. Dkt. 18-3. The appraisal award on the structure and landscaping was for $386,673.07 ACV and $419,515.19 RCV. Dkt. 18-3.

Enservio, the company hired by Defendant to conduct a valuation on the contents of the house, issued their estimate on January 7, 2014. Dkt. 52-17. It estimated the contents at: $241,733.59 ACV and $526,882.33 RCV. *Id.,* at 616.

On January 11, 2014, Defendant paid $296,981.04 for the structure (this is the appraisal award of $419,515.19 minus the amount previously paid by American Family of $122,534.15 on or about 5/28/2013). Dkt. 22-2. At this point, Plaintiffs had not repaired the structure.

That same day, Defendant sent Plaintiffs a check in the amount of $237,008.59 for contents (ACV from the Enservio estimate minus $1,000 deductible and minus the amount previously paid by Defendant of $3,000). Dkt. 22-2. This check was rejected by Plaintiffs (Dkt. 22-3), reissued, and then later cashed (Dkt. 33-2).

On April 7, 2014, this Court granted Defendant's Motion to Confirm Appraisal Award Regarding the Structure Claims. Dkt. 20.

Parties were unable to come to an agreement about the value of the loss for the contents of the house. On April 28, 2014, this Court granted Defendant's motion to compel the parties to engage in the appraisal process for the Plaintiffs' contents claim. Dkt. 25.

On August 8, 2014, an appraisal award was issued on the value of the contents. Dkt. 33-1, at 1. The parties agreed that "the appraisal award is conclusive as to the amount of the contents loss, exclusive of any applicable limits pursuant to the policy, to which the Plaintiffs are entitled to recover." Dkt. 28, at 3. On August 21, 2014, Defendant paid the remaining amount due in accord with the appraisal award on the contents claims. Dkt. 33-2. On November 4, 2014, the appraisal award regarding the contents claims was confirmed by order of this Court. Dkts. 35 and 36.

Defendant has now paid $419,515.19 for the structure and $328,095.27 for the contents. Dkt. 38. As of December 2014, it has paid $99,983.57 in "ALE" benefits (for the fair rental value of the premises if uninhabitable) under the policy. Dkts. 38-1 and 46-1. It paid the ALE benefits in full, and terminated those benefits on January 11, 2015. *Id.*

1    On December 1, 2014, Defendant's motion to summarily dismiss
Plaintiffs' claim for attorneys' fees, pursuant to *Olympic Steamship Co. v.*

2    *Centennial Ins. Co.*, 117 Wash.2d 37 (1991), was granted and the claim

3    dismissed. Dkt. 41. This Court held that "[t]he dispute in this case was not over
coverage" and that Defendant "accepted coverage." *Id.*, at 4. Plaintiffs did not

4    oppose the motion.

5    On February 10, 2015, Defendant's motion for a ruling that Plaintiffs' claims based on

6    the WAC violations pursuant to the IFCA be dismissed because there has been no denial of

7    coverage was denied and Plaintiffs' motion for leave to amend their complaint to add a claim for

8    violation of the Washington State Consumer Protection Act, RCW 61.24.127(a)(b) was granted.

9    Dkt. 62. Plaintiffs filed their First Amended Complaint on February 18, 2015. Dkt. 72.

10    The discovery deadline was March 8, 2015, the dispositive motions deadline is April 7,

11    2015, and trial is set to begin on July 6, 2015. Dkt. 44.

12    **DISCUSSION**

13    **A. DISCOVERY GENERALLY AND MOTION FOR PROTECTIVE ORDER
    STANDARD**

14

15    Fed. R. Civ. P. 26 (b)(1) provides:

16    Unless otherwise limited by court order, the scope of discovery is as follows:
Parties may obtain discovery regarding any nonprivileged matter that is relevant

17    to any party's claim or defense--including the existence, description, nature,
custody, condition, and location of any documents or other tangible things and the

18    identity and location of persons who know of any discoverable matter. For good
cause, the court may order discovery of any matter relevant to the subject matter

19    involved in the action. Relevant information need not be admissible at the trial if
the discovery appears reasonably calculated to lead to the discovery of admissible

20    evidence.

21    "The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is

22    relevant to anything that is or may become an issue in the litigation." *Oppenheimer Fund, Inc. v.*

23    *Sanders*, 437 U.S. 340, 351, n.12 (1978)(*quoting* 4 J. Moore, Federal Practice ¶ 26.56 [1], p. 26-

24    131 n. 34 (2d ed. 1976)). "At the same time, discovery, like all matters of procedure, has

1   ultimate and necessary boundaries.  Discovery of matter not 'reasonably calculated to lead to the

2   discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Id.,* at 351-352.

3   Pursuant to Rule 37(a)(1), "a party may move for an order compelling disclosure or discovery."

4          Fed. R. Civ. P. 26(c) "Protective Orders" provides that the court "may, for good cause,

5   issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

6   burden or expense. . ."

7   **B.  DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
       MOTION TO COMPEL**

8

9          1.  <u>Motions as They Relate to Attorney-Client Privilege and Work Product
            Doctrine</u>

10          Defendant moves for the issuance of an order protecting it from having to produce

11  documents which were generated after October 2, 2013 (the date Plaintiffs notified the

12  Washington State Insurance Commissioner of their complaint against Defendant) and which

13  were withheld as privileged because they are protected by the attorney-client privilege, work

14  product materials, and created in anticipation of litigation.  Dkt. 63.  Defendant alternatively

15  asserts that those documents generated after November 1, 2013 (the date Plaintiffs' filed this

16  case) and which it asserts are privileged should be protected.  *Id.*

17         Plaintiffs did not directly respond to the motion for protective order, but, instead filed their

18  Motion to Compel (Dkt. 67).  In that motion, Plaintiffs seek an order compelling Defendant to

19  produce documents in connection with:

20         **Request for Production #7**:
21         "Any correspondence or other documents exchanged between Defendant and any
            non-party regarding the Loss, Policy, Claims or Plaintiff."

22         **Request for Production #8**:
23         All communications between Defendant and Enservio, or its agents, regarding the
            non-salvageable contents assessment of this Loss.

24

1   Dkt. 67.  (It appears that Plaintiffs failed to properly number the Requests for Production in their

2   motion.  The motion's "Request for Production #7" is the Request for Production #9 in

3   Plaintiffs' First Request for Production of Documents (Dkt. 68-1, at 5); the motion's "Request

4   for Production #8" is the Request for Production #10 in Plaintiffs' First Request for Production

5   of Documents (Dkt. 68-1, at 6)).

6       Defendants argue that they have turned over all documents responsive to these requests,

7   or included them in their Privilege Log or Supplemental Privilege Log. Dkt. 75.

8       Accordingly, Plaintiffs move for an order compelling Defendant to produce bates

9   stamped documents #21, #62, #82 and #83, which are listed in the Defendant's Privilege Log.

10  Dkt. 67.  Plaintiffs also move for an order compelling Defendant to produce the documents

11  identified in pages 4-7 of Defendant's Supplemental Privilege Log.  Dkt. 67.  In both logs,

12  Defendant asserted "attorney –client privilege, anticipation of litigation and work product" as to

13  each of these documents.  Dkt. 68-3, at 2-7.

14      As an initial matter, the parties' briefing raises the question of which law, federal or state,

15  applies to the assertion of attorney-client privilege and the work product doctrine.  Under the rule

16  of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction,

17  as is the case here, apply state substantive law and federal procedural law. *Gasperini v. Center*

18  *for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Under Fed. R. Evid. 501, "state law governs

19  privilege regarding a claim or defense for which state law supplies the rule of decision."

20  Accordingly, Washington substantive law applies to claims of attorney-client privilege. Federal

21  law, however, governs assertions of work product protection. *See United Coal Cos. v. Powell*

22  *Constr. Co.*, 839 F.2d 958, 965–66 (3d Cir.1988); *Lexington Ins. Co. v. Swanson*, 240 F.R.D.

23  662, 666 (W.D. Wash. 2007).

24

1    In Washington, there is a presumption that there is no attorney-client privilege relevant

2    between the insured and the insurer in the claims adjusting process, and that the attorney-client

3    and work product privileges are generally not relevant." *Cedell v. Farmers Ins. Co. of*

4    *Washington*, 176 Wash. 2d 686, 698 (2013)(*internal citations omitted*).  An "insurer may

5    overcome the presumption of discoverability by showing its attorney was not engaged in the

6    quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in

7    providing the insurer with counsel as to its own potential liability; for example, whether or not

8    coverage exists under the law." *Id*.

9    Here, Defendant argues that the documents at issue were not produced in the course of

10   investigating or processing the claim, but go to liability.  Under *Cedell*, then, "the insurance

11   company is entitled to an in camera review of the claims file, and to the redaction of

12   communications from counsel that reflected the mental impressions of the attorney to the

13   insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary

14   responsibilities to its insured." *Id.*

15   Defendant argues in later pleadings, however, that the Court should not look to the

16   attorney-client privilege, but should analyze whether these documents should be disclosed under

17   the work-product doctrine.  Dkt. 75.

18   Under Fed. R. Civ. P. 26(b)(3), the work-product doctrine protects from "discovery

19   documents and tangible things that are prepared in anticipation of litigation or for trial by or for

20   another party or its representative." *See also United States v. Richey*, 632 F.3d 559, 567 (9th Cir.

21   2011).  "The work-product doctrine covers documents or the compilation of materials prepared

22   by agents of the attorney in preparation for litigation." *Richey,* at 567 (*internal citation omitted*).

23   "To qualify for work-product protection, documents must: (1) be prepared in anticipation of

24

1    litigation or for trial and (2) be prepared by or for another party or by or for that other party's

2    representative."  *Id.* (*internal quotations omitted*).  Further, where a document was not prepared

3    exclusively for litigation (it serves a dual purpose), "then the 'because of' test is used."  *Id.* "Dual

4    purpose documents are deemed prepared because of litigation if 'in light of the nature of the

5    document and the factual situation in the particular case, the document can be fairly said to have

6    been prepared or obtained because of the prospect of litigation.'" *Id.* "[C]ourts must consider the

7    totality of the circumstances and determine whether the document was created because of

8    anticipated litigation, and would not have been created in substantially similar form but for the

9    prospect of litigation" in applying the "because of" standard.  *Id.*, at 568 (*internal quotations*

10   *omitted*).

11        Defendant's motion for a protective order as to (Dkt. 63) should be denied without

12   prejudice.  The Court is unable to discern under the current record, whether any of the documents

13   at issue are protected by the work product doctrine.  None of the documents were filed in support

14   of the motion, under seal (See Local Rule W. D. Wash. 5(g)), or otherwise.  Moreover, Plaintiffs

15   have pointed out that the Defendant's Supplemental Privilege Log is not sufficiently clear as to

16   all the entries.  Descriptions such as "American Family Claims File Log after 10/02/12 – Date of

17   IFCA Suit Notice" or "Document/image log note after 10/02/12 – Date of IFCA Suit Notice" are

18   not enough to determine whether the doctrine applies.  Defendant has not yet shown good cause

19   for issuance of a protective order.  Plaintiffs' blanket motion to compel all of these documents

20   (Dkt. 67) should also be denied without prejudice.  Certain entries in the Defendant's

21   Supplemental Privilege Log, such as "American Family Claim File Log – entry re: meeting with

22   legal," are sufficient.

23

24

1    To the extent Plaintiffs move for an order compelling Defendant to provide a more

2    detailed Privilege Log and Supplemental Privilege Log (Dkt. 67), that motion should be granted.

3    Defendant should be ordered to provide a more detailed Privilege Log and Supplemental

4    Privilege Log to Plaintiffs by April 3, 2005.  Parties are strongly urged to resolve this dispute on

5    their own without court intervention.  Only absolutely necessary motions should be filed.

6          2.   <u>Motions as They Relate to the Advertising Materials and Enservio Generally</u>

7    Plaintiffs move for an order compelling:

8    **Amended Request for Production #1**:

9    All marketing or advertising documents used by Defendant to solicit
      homeowners' insurance policy customers in the State of Washington through the
10    period of 1-21-2012 (6 months prior to the effective date of the policy) through 7-
      21-2013 (the last day the policy was in effect).

11

12    Dkt. 67.  Plaintiffs argue that these materials are relevant to Defendants' possible deviation from

13    promised standards of conduct or claims settlement practices and as to what a reasonable person

14    would believe they are entitled.  Dkt. 67, at 5.

15    Plaintiffs also move for an order compelling:

16    **Amended Request for Production #5**:

17    All documents, including policies, contracts, procedures, instructions, and
      guidelines, given by Defendant to Enservio relating to non-salvageable contents
18    assessments and valuations for Defendant that were in effect during the effective
      period of the policy (7-21-2012 through 7-21-2013).

19    Dkt. 67.

20    Plaintiffs' motion to compel documents responsive to Amended Request for Production

21    #1 and Amended Request for Production #5 (Dkt. 67) should be granted and Defendant's motion

22    for a protective order as to these requests (Dkt. 63) should be denied.  Plaintiffs have shown that

23

24

these documents are relevant and Defendant has failed to show that good cause exists for the issuance of a protective order.

## C.   DEFENDANT'S MOTION TO COMPEL IRS RECORDS AND TAX RETURNS AND MOTION TO STRIKE

Defendant's motion to compel Plaintiffs to execute a stipulation and release to allow Defendant to obtain Plaintiffs' IRS records and tax returns from 2011 to present from the IRS (Dkt. 65) should be granted.  Defendant has shown that, in light of Plaintiffs' claims that foreclosure proceedings were initiated on the property (and that they damaged as a result despite Plaintiffs testifying that they had enough money to pay off the mortgage arrears), Plaintiffs' have placed their financial situation at issue and the records sought may well be relevant.  Further, Plaintiffs testified that all their copies of their tax related documentation burned in the fire.  Dkt. 66-3, at 3.  Defendant's motion to compel (Dkt. 65) should be granted.

In its Reply, Defendant also moves to strike paragraph three of R. Scott Taylor's Declaration.  Dkt. 80.  Defendant's motion to strike (Dkt. 80) should be granted for the purposes of this motion alone.  The portion of the Declaration to which Defendant refers was of little or no assistance to the Court in deciding the motion to compel, however.

## ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion for Protective Order (Dkt. 63) is **DENIED** as to Plaintiff's Amended Request for Production #1 and Plaintiff's Amended Request for Production #5; **DENIED WITHOUT PREJUDICE** as to Plaintiffs' requests for documents for which Defendant has asserted work product doctrine protection,

- Plaintiffs' Motion to Compel Production of Documents from Defendant (Dkt. 67) is **GRANTED** as to **Amended Request for Production #1** and Plaintiff's

1    Amended Request for Production #5; **DENIED WITHOUT PREJUDICE** as to

2    Plaintiffs' requests for production of documents for which Defendant has asserted

3    work product doctrine protection; and to the extent Plaintiffs move for an order

4    compelling Defendant to provide a more detailed Privilege Log and

5    Supplemental Privilege Log, that motion is **GRANTED**;

6    • Defendant shall provide a more detailed Privilege Log and Supplemental

7    Privilege Log to Plaintiffs on or before **April 3, 2015**.

8    • Defendant's Motion to Strike (Dkt. 80) is **GRANTED**, for the purposes of the

9    Defendant's Motion to Compel alone; and

10    • Defendant's Motion to Compel IRS Records and Tax Returns (Dkt. 65) is

11    **GRANTED**.

12    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

13 to any party appearing pro se at said party's last known address.

14    Dated this 16th day of March, 2015.

15

16

17    ROBERT J. BRYAN
   United States District Judge

18

19

20

21

22

23

24

ORDER ORDER ON DEFENDANT'S MOTIONS
FOR PROTECTIVE ORDER AND TO COMPEL
AND PLAINTIFFS' MOTION TO COMPEL- 12